We'll hear first on the case of Polymer Dynamics v. Bayer Corporation. It has three docket numbers, 073730, 073731, and 074645. Thank you, and may it please the court. Jeff Lampkin on behalf of Polymer Dynamics, Inc. or PDI. I would like to reserve five minutes for rebuttal. That's granted. After the machines that PDI purchased from Bayer suffered repeated and catastrophic failures, PDI was reduced from a technological leader to a struggling company. Three errors prevented the jury from offering full recompense for the injuries that PDI suffered as a result of Bayer's failures. First, the trial court misconstrued Pennsylvania's UCC provisions relating to the failure of an exclusive defect. Second, the trial court committed plain error in omitting reckless fraud from the jury interrogatories, the worksheets the juries were required to use in answering, arriving at a verdict. Third, the trial court improperly prevented the jury from determining the content of the party's agreement, including whether that agreement had limitation provisions at the ones at issue here. Returning to the first issue, Bayer's proposed contract to PDI included a provision that stated that the exclusive remedy for defects would be repair or replacement. But the evidence showed that Bayer not only failed to provide repair or replacement, and eventually repudiated any effort to provide repair or replacement, that it also impeded PDI's own efforts to repair and replace itself by misrepresenting the cause of the failures. The Pennsylvania Supreme Court, in our view, would follow the five federal courts of appeals that have interpreted the laws of the 10 or 11 state Supreme Courts or intermediate appellate courts that have followed the rule announced in Cowdell, that when there's a failure of an exclusive remedy, that invalidates consequential damages limitations as well. Well, but it seems to me you have to contend with our precedent in Chatelot's. Could you distinguish that for us? Well, as an initial matter, Chatelot's was decided at a time when the New Jersey Supreme Court did not have a certification procedure. What we're asking here is for the court to certify to the pencils of the new Supreme Court. New Jersey has since adopted the Chatelot result and reasoning, hasn't it? It has. It turned out to be a correct eerie guess, but it is an eerie guess nonetheless. And the courts are on all over the map on this. There's lots of cases going our direction. Is it frequent that New Jersey and Pennsylvania disagree when they consider identical clauses from the UCC? Is that a frequent occurrence? I don't know whether they always come out the same way or they don't, but it's not uncommon for neighbors to disagree on matters like this. The courts are all over the map on it. In fact, five of the last seven... The reason I ask that is that it's often in Virginia. West Virginia generally follows Virginia and Virginia follows West Virginia. And I thought there might be the same sort of understanding and pattern between New Jersey and Pennsylvania. I don't know that to be the case, Your Honor, one way or the other. And you don't know that it isn't the case. Exactly. I don't know one way or the other. But this is a matter that, for example, courts in Pennsylvania, since 2000, five of the seven courts that have addressed this issue have agreed that Chatelot's would be rejected by the Pennsylvania Supreme Court and have endorsed the approach adopted by Cowgill. And given that disagreement, I think it was... One of the factors on referring is whether or not there are issues of fact in the record. Is that right? That is correct. That is a relevant factor. Material issues of fact. I was one of the drafters of the Virginia provision many, many years ago, and I opposed giving district courts... I was then a practicing lawyer... District courts the power to refer, and I was overruled. It seems to me there's greater wisdom here in Pennsylvania. But one of the things that we explored thoroughly in Virginia, this was back in the 70s, is the kind of record the Supreme Court of Virginia would like to see on a referral. And they'd like to see a very clean record with no disputed issues of fact. We don't have that here, do we? For material issues, there are none. The only question we know exactly what Bayer contends was in the contract. And for purposes of certification, we would assume that is what the contract was. And the only question is, when you have a failure of remedy, when there is no repair or replacement, and it's agreed here there was no repair or replacement for four years, repaired them himself, when that occurs, does it also take down a consequential damages limitation? And that's an issue on which many courts have opined, and many courts have disagreed. And given that disparities of outcomes, the proper course for this court would not be to make an eerie guess, but to allow the authoritative expositor of Pennsylvania law, the Pennsylvania Supreme Court... Is it relevant that this dispute has been ongoing since 1995 or thereabouts? Started litigation in 99, and here we are at 2008. You want us to refer to yet another court for yet another consideration? We're the plaintiff. We have yet to correct a judgment. We're willing to take the weight. Well, why didn't you file it in state court in the first place, if you're so eager to have the Pennsylvania Supreme Court rule on the question? Well, when you originally filed this, this was a RICO action. You didn't have to bring the RICO claim. That's correct. But that was the dominant claim in the case when it was originally brought. That eventually dropped out. It was so dominant it went away like trumped up RICO claims usually do. Well, I can't say that they're trumped up. We haven't challenged the summary judgment on the RICO, but there was a federal question. They chose a federal court for the federal question, and I don't think it should be counted against them that there were subordinate state issues that eventually became dominant after quite a few years of litigation. You don't always know what the lynchpin in your case is going to be, often until you get to the jury or when you get back. Well, all right. Well, when the RICO claim was decided, did you seek a remand to state court? No, the case had been in the federal court for long enough that everyone was of the agreement that it should just stay there, that it would have been more efficient. Everyone was comfortable with the federal disposition, but now you want a do-over with the state system. No, Your Honor, we're not asking for a do-over. We're simply asking that the state courts, which have the authoritative ability to tell you the correct answer under state law, take the first shot at answering state law. But even if the court were to disagree and weren't to certify, we think we have a better and more likely outcome under Pennsylvania law as a matter of text. Section 2719B says that when an exclusive remedy fails of its essential purpose, quote, remedy may be had as provided in this title. The phrase as provided in this title is most naturally read to mean the general remedy provisions that are set forth in the title. The commentary confirms it. It says when an exclusive remedy fails of its essential purpose, it must, quote, give way to the general remedy provisions of this title. A clear reference to provisions like 2714 and 2715, which provide the general remedies. The district court in this case effectively read this to mean that when there's an exclusive remedy and it fails its essential purpose, that must be stricken. And then you go back to the contract and you start applying the contract again. But that's not actually what 2719B says. It says remedy may be had as provided in this title. It's a very odd way of saying nearly. This title also provides that some remedies can be limited by contract, which occurred here. So why not read that phrase precisely in that way, that if there are, if the parties bargained for a limitation, that limitation should survive. Particularly whereas here, there was no claim for breach of a warranty of fitness for a particular purpose. There's, I think that question has two pieces. The first piece is that subsection A provides the general rule that you may provide limitations of remedies. Sub, it then says that that's subject to sections B and C, which subject means these are rules of limitation. They're not expansions, they're limitations. And so once you get to B and B says, ah, you have failed your exclusive remedy, go to the general remedy provisions. You're now outside of A. You don't go back to A again. In fact, if you tried to go back to A again, you would end up in a loop because A says you can have the limits. B says if they fail, go to the general provisions. If you go back to A, you have a rule that says you can have the limits again. You end up with a loop. Clearly when the drafters drew this up, they meant for you not to go back to A, but to go to the general remedy provisions. Even though some courts have gone the other way, as in Chatlis, even those courts under the doctrine of unconscionability have generally held, like this New Jersey Supreme Court when it adopted your Chatlis rule. That as a matter of unconscionability, when there's a wrongful repudiation of the repair or replace remedy, and that causes unforeseen damages, unforeseen consequential harm, then as a matter of unconscionability, they will lift or they can lift. But there was no refusal to repair. They spent six weeks, spent $105,000 trying to repair it. In fact, their view is, as I read their brief, is that the equipment wasn't defective. It just might not have been fit for that particular purpose. Well, the jury, of course, found otherwise. It found a breach of contract, and it found negligent misrepresentations. So I don't think that can be credited. But on top of that, it is not disputed that, in fact, these items failed, that they failed repeatedly, and that there were representations at the front that they would not fail, that they would last for 50,000 hours or that there would be only once every six months maintenance would be required. But they didn't ultimately fail. They brought a replevant action. And if these pieces of equipment were as bad as you say, I would think you would have been happy to hand them over in a replevant action. Instead, you fought the replevant action, because through your own efforts, you were able to make them suitable for your purposes. That's exactly the point of this case, that if Bayer had come through with repair in place and actually fulfilled its promise, PDI would have been happy. It wanted these machines. It needed these machines to survive. It had to make the machine work. And that's why it invested $12 million of its own money, at least, to try and make them work. And that money is what the jury awarded you for the breach of their ability to repair it. That's right. But the question is, what is the appropriate—that doesn't come close to the damage to Bayer that—excuse me, the PDI that occurred as a result of these failures. It lost millions of dollars in existing contracts, somewhere between $70 and $171 million. It was reduced to a struggling company with virtually no customers. So the whole point is, what is the legally correct measure? And our view, consistent with Cowdell and five of the seven most recent opinions from courts in Pennsylvania, is that when the remedy, the exclusive remedy, fails of its essential purpose, then all available remedies are open, and a consequential damage is when it's failed. If there are no further questions, I will— Counsel, did you reserve time? I did five minutes for rebuttal, and I believe I've possibly dug into that a bit in answering your question. Thank you. Thank you. It pleased the Court. Virginia Seitz for Bayer. A remedy fails of its essential purpose only when two things happen. First, when the remedy doesn't achieve a warranted result, and second, when enforcing that limited remedy deprives the buyer of a minimum adequate remedy. Those are the conditions for failure of essential remedy. And the judge here quite rightly found that Bayer's conduct had not deprived PDI of any warranted result. And the reason is both that PDI never claimed that the warranty, the only warranty in this contract, was breached. And it's a limited warranty, by the way. It's a warranty that supplier-provided or manufactured parts would be repaired or replaced. The remaining aspects of the contract remedy here are fully enforced. That is, the jury was instructed that it was entitled to provide restitution and reliance damages under the contract as a whole. And it did provide $12.5 million of damages. So there was neither any failure of any warranty, nor was there a deprivation of PDI of a minimum adequate remedy under this contract. Thus, the contract remedies did not fail of their essential purpose. And that question is not presented in this case. Would the case be different if there had been an alleged and a proof of a warranty, a breach of a warranty of fitness for a particular purpose? I have to give, yes, it would be different in that our argument would not be that the remedy had not failed of its essential purpose, but would instead be that under CHATLOS and the applicable law, nonetheless, the limitation on consequential damages survives. So the case would be different in that it would be making a purely legal argument. But here, what we are saying is both that there is no point in certification and that we are entitled to prevail on this point, because the remedy did not fail of its essential purpose, as the trial judge rightly found. Should that have gone to the jury? I think your adversary pointed out that the judge took some things from the jury, or at least didn't put some things to the jury, and that was a mistake. Why wasn't that a mistake? Shouldn't the jury have had a shot at this? No, because the record did not support sending to the jury the question whether the remedy failed of its essential purpose. In particular, this contract not only does not include a warranty of merchantability or fitness for a particular purpose, but it expressly states that those warranties are not provided. The only warranty that is given in this contract is that supplier-manufactured and other manufactured parts will be free of defects, not the machines. In that setting, there simply is not the breach of a promise to achieve a certain type of purpose with these machines that could support an instruction on failure of essential purpose, as the trial judge rightly found. Now, that's a reason both not to certify because the question isn't presented and a reason it was appropriate for the judge to refuse to send this question to the jury. But even if you didn't agree with that and you wanted to reach out and decide the question of the proper interpretation of the Pennsylvania Code in this setting, I would say CHATLOS provides the definitive analysis for the circuit of this text, which is that when an independent clause exists that excludes consequential damages, and if there's evidence that that clause is independent, as there is here, there is no warrant for not enforcing that. Well, the text is the same, but why should we blithely assume that the Pennsylvania Supreme Court would reach the same result as we believe the New Jersey Supreme Court would reach? Wisconsin didn't. Well, Wisconsin turned, the Wisconsin case of Ragon turned very extensively on analysis of language in Wisconsin Supreme Court decisions. Your analysis in CHATLOS was based on the text of the statute, which is what we have available here. The other reason I wouldn't say it would be blithe would be because there is a tradition, a practice in the Third Circuit of deferring to the analysis of a district judge that resides in the state about what the court is likely, the Pennsylvania court is likely to conclude. So that would be a second reason. That goes against you, though. CHATLOS, isn't that what happened in CHATLOS? And the only state court case that's out there. The major case in this case would be our trial judge's analysis, which agrees with our position on this and indicates it's the majority position among Pennsylvania district courts that have decided the question. In addition, we'd refer you to the White and Summer Treatise, which indicates that we have the majority support of courts around the country, although there's some dispute about this. But most important, I would say, is the fact that in every single case where there's a finding that a failure of a remedy has failed of its exclusive purpose, you see in that setting a contract where there's a particular warranted promise. You see in that setting where the buyer has no other remedy for the wrong inflicted on him. We don't have those facts in this case. This case isn't like the other cases where courts have found a failure of exclusive remedy. In none of those cases will we have what we have here too, which is the express exclusion by the parties of any warranty of merchantability or fitness for a particular purpose. And that is because of the setting that we were in here. These machines had not been tried in this unique technology before. That was fully understood by the parties. And there was every reason for them to allocate risk in the way they did in this contract. So I would submit to you that this case simply does not present for certification the question on which there is otherwise a conflict in the country, and that in any event, you should adhere to your analysis of the text of the statute in Ragon, in Chatlos, and simply affirm. Tell me again why you think the evidence wasn't sufficient on the failure of the remedy, given the fact that they were never, your client was never able to fix it. They finally had to spend $12 million of their own to fix it, which you would argue they got back from the jury and they had to re-engineer it. Now, why isn't that evidence of failure of essential purpose of the repair remedy? The repair remedy in the contract is solely a repair remedy for defects in, quote, seller manufactured parts and other manufactured parts, not for the machines failing to achieve the purpose that they had in, you know, in the new technology that PDI had adopted. All right. Given that, why didn't that fail? Because that, first of all, that challenge that that warranty was breached was not made by PDI. And second, that limited failure would not have deprived the other contract remedies, restitution and reliance damages, on which the trial judge instructed the jury. That would not have deprived those remedies of any essential purpose in the contract, specifically because this contract stated, we are not warranting merchantability. We are not warranting fitness for a particular purpose. We are not saying that these machines are going to be able to achieve exactly what you are hoping they're going to achieve. We are only warranting that the parts themselves will not be defective, and they were not. What caused the breakdown, what caused problems, was inserting these machines in this new technology, and it did not work as it should have. And the jury accordingly awarded damages for that. But that does not mean that the contract remedies failed of their essential purpose, particularly in this contract, where it's clear that the parties were allocating risk. That's clear from the deliberate statement that certain kinds of warranties don't apply that usually do, merchantability and fitness for a particular purpose. And it's also clear in the separateness or independence of the clause, which indicates that consequential damages are excluded no matter what else happens. So we would submit to you both that the question is not presented and that the trial judge had it right on the law and on its interpretation of the text of the statute. Should I, would you prefer that I turn to other issues in the appeal or move to the cross appeal? You can do what you would like to do. I would like to briefly address unconscionability then. The trial judge made certain findings on unconscionability, which I think should be affirmed both that this is a commercial dispute between equal parties. This was an arm's length transaction that both parties recognize the risks in this transaction and therefore that it wasn't unconscionable to enforce the limit on consequential damages. We think that those findings are appropriately within the trial judge's deference and they should be affirmed and it wasn't unconscionable to enforce that limitation here, particularly in light of the fact that the jury did award a twelve and a half million dollars. I take it you agree with the appellant that there needs to be a reversal and remand on the post-judgment interest issue. Yes, we do agree with the appellant on that and we so conceded in our brief. Thank you for your candor on that. You're welcome. It was pretty hard to dispute. The plein air argument is the one I'd like to turn to next. And what I would point out is that the trial judge here found that there was no effect on the outcome of an inconsistency between the jury interrogatory and the instructions. All of the cases that my opponent cites involve situations where the jury was wrongly instructed in addition to having an interrogatory that might have been incomplete in the jury room. We simply have, we don't have that situation here. We have an accurate instruction of the jury. We have instructions that were carried into the jury room. Preferable if the interrogatory had said, do you find in accordance with the instructions previously given X. Absolutely. But an argument that this is plain error would create a very strong incentive for counsel not to object to an incorrect interrogatory as long as the instructions are correct. Because it would create an incentive for district judges not to use them. Right. If the jury rules for your client, there's no problem. But if the jury doesn't, you have a plain error ground for a new trial automatically. If this kind of error, unobjected error can result in a plain error. So there's every incentive not to even point out to the trial judge that there's an error in the interrogatory if this can be plain error. But most important on that issue is the fact that the trial judge here found that there was no effect on the outcome. And that determination, I think, should receive deference from this court in its own evaluation of whether this is plain error that requires reversing. And I'll make only two points with respect to my cross appeal. First is that the important and interesting question here is what amounts to reasonable certainty with respect to damages. And the question is precisely raised, which is whether the kind of testimony here, which is loose and general, to say the least, is sufficient to create that kind of reasonable certainty. In the cases cited by my opponent for the proposition that testimony is sufficient to assert. There was the nine million that they said they intended to invest somewhere else, but they had to spend on this effort. And the three million that they talked about, that roughly equals the 12. But they were people who knew what they were talking about. There was no attack on their capacity or ability to know those figures and those facts. Why isn't that sufficient? Well, the testimony about the amount of money spent on labor and parts to repair came from Mr. People's assistant, Deborah Kocher. She did not have any personal knowledge or any basis, nor was any basis established in the testimony for that being sufficient. Was there an objection due to lack of foundation on that? I don't believe that was our examination of her. I think that was her counsel's examination. And I don't believe there was an objection. But it was not the time for us to assume there's lack of foundation for that testimony when no objection to that effect was made. Our submission is not that the testimony was improper, but that it's insufficient to establish reasonable certainty about what precisely their damages were. But to say that it's insufficient, you're... It sounds like they've got you coming and going because it sounds like you're arguing it's unpersuasive, but the jury found it persuasive. And to the extent you're arguing that it's incompetent because she didn't know what she was talking about, there was no objection due to lack of foundation. It's admissible. And the jury clearly did find it persuasive. Our argument is a purely legal one, which is that that level of testimony by somebody as to whom there's no support in the record for any personal knowledge about amounts, persons conducting the work, any supporting detail, that is insufficient by itself to establish reasonable certainty. As a matter of law. As a matter of law. And that is our... If she has no personal knowledge, how is she competent to testify about it? Then she's giving an expert opinion. Well, perhaps, you know, your point would be we should have objected. We did not. But we are arguing that as a matter of law, without any additional foundation, it doesn't amount to reasonable certainty under Pennsylvania law to establish $9 million in additional labor costs for this entity. And so it's not that we are saying that it should have been excluded. We are saying it's insufficient as a matter of law. And that's the final point I want to make, which is we have made no argument of excessiveness or remitter. We are arguing only that as a matter of law, this was insufficient to establish the amount. Was it discussed at all before the district court? I didn't see anything in the record about it. We, our post-trial motions were that this was, that the testimony was inadequate to support these damages to a reasonable certainty. Right, but nothing about remitter. No, except that we specifically stated to the district court that we were not seeking remitter. Okay. If there are no further questions. Well, actually, you have like a minute left. What's the basis of jurisdiction in the district court at this point? Now, it was a federal question when there was a RICO claim. Is this a diversity case? It's a pendant jurisdiction, I believe, to the RICO claim. Was the original finding in the court within its discretion retained the case after it had developed? When the RICO case was dismissed, did anybody move to, did you all move to have it dismissed? I don't know, but our trial counsel is at my table, and I could inquire of her. No, we did not. We did not. Due to the limit. And is, in any event, is RICO exclusive in the federal courts? I think this case could have been filed in the state court. Exactly. It isn't exclusive. It could have been brought in the Pennsylvania court. Yes. If the court has no further questions. No, I think we're all set. Thank you. I wanted to address just three issues very briefly. First, dealing with the failure of remedy. Second, dealing with our plain error intention. And third, dealing with the cross-appeal. With respect to the failure of remedy, it is the case that there was a warranty here. First, neither the UCC nor any case says that the failure of remedy clause is limited to warranty claims. No case has ever said that. But here, there was a warranty that the items would be free of defect. And we know that the pencils were so out of concentricity with the nozzles they're supposed to go into, that they slammed into them and repeatedly broke. That's a defect. They repeatedly broke, sometimes after seconds or minutes of use. And there was a breach of warranty in the sense, there's a breach of the promise to repair or replace. At no point did Bayer successfully repair or replace. The warranty wasn't, we will attempt to make best efforts or possibly do our best to make the most of this. Is it simply a matter of moving the things so that it would not do that? Well, the little pencils have to go into the hole to meter in the different chemicals. All right. So they pop in and out at rapid rates. And so if they slam into the ring on the outside, they're going to bust. So ultimately, they were moved. Yes, they move back and forth as a part of the process of the machine. And they were made out of improper metals. They were moved so that would happen. They would move in order to, they should precisely pop in and out according to the Bayer's patents. Right. And rather than popping in and out, they're out of ground and they would slam into the edges. Right. So you had to move them so that they'd be in round. Well, we actually had to redesign them to be properly round and make them out of proper metals, unlike what we were getting from Bayer. That was just the $12 million effort. Well, that was just the pencils, which require it. But there was also problems with what are called the Danfoss valves, which had to be re-engineered as well. That was part of the $12 million also. Exactly. And so there is a failure of remedy problem here because there was a breach of a promise in the contract. And in fact, it's not limited to merely breaches of remedy. I'm having difficulty, and let me just put it simply to you. If I promise that I'm going to repair something and I don't repair it, but I have in a separate clause of the contract saying that you get the repair, but you don't get anything else, why should they be interdependent rather than independent? Well, why can't people bargain to say, yes, I'm going to repair it, and if I fail to repair it, I'll pay whatever it takes to repair it. But in another part of the contract, I don't want any consequentials. People can bargain for that, can't they? That is exactly the question that the state courts, invoking both the text of the UCC and the policy I've divided on, are these clauses meant to be independent in the sense that one is a backup for the other? It has no play whatsoever until the first one falls. And it's sort of an odd thing to read. The repair replaced remedy as being the primary barrier. And then once that fails, this other clause comes in to provide a separate limit. And the Colorado Supreme Court, looking at that, said, well, you know, people can bargain for that, but if they're going to do it, they had better make it clear. And if they're not absolutely clear that this is a backup for the failure of the essential remedy, the exclusive remedy, we're going to read this as a pair of limits that go together. And the limits go together such that when there's a failure of the exclusive remedy, particularly one that the parties didn't anticipate, a wrongful repudiation, one that imposes consequential harm that the parties didn't anticipate. When that occurs, we're going to say, I'm sorry, the exclusive remedy falls and falls with it, the limitation on consequential damages. But that is, again, a question that the state courts have repeatedly addressed and have repeatedly divided on. Second, with respect to plain error, I want to emphasize the impact of a special interrogatory or special verdict form. This is the worksheet that was given to the jury. And the judge said, you must answer these questions at arriving at a verdict. So this is the document the jury has in front of them, and they answer the questions, they walk through the questions, they read the question, they give an answer, they read the question, they give an answer. If those questions don't give the jury an opportunity to find reckless fraud, if they simply preclude reckless fraud, there is very little chance that the jury is going to somehow try and find a contradictory bit of information in the jury. Just the interrogatory was. That's right. And the question is, what's the practical impact of having the document the jury has in front of it and working on both documents? Didn't they have the instructions and the interrogatory? Of course. But the one that jury had to work with and had to fill out and guided us and answer this question, answer that question is the interrogatory. And so that is the dominant force in the jury room, not the instructions that are probably sitting somewhere else on the table. Finally, if I can go to the cross appeal very briefly, I wanted to point out that Judge Ellis, in addition to the fact that Dwayne Peoples specifically testified about the $9 million just to reengineer the machines, Bayer's own counsel looked at the jury and said, PDI spent $10 million making super duper nozzles and pintles. Whether you call that a unilateral stipulation, a waiver, invited error, I don't think it's error because I think there was plenty of evidence to support what he said, or an invited error. The one thing counsel can't do is tell the jury that there's $10 million spent and then appeal to this court and say, there's no evidence that they spent $10 million to reengineer these machines. There are no questions. Thank you very much. Counsel, thank you. All counsel, thank you for your excellent briefs and argument. I'm going to ask the court.